1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
Ryan B. Martin (State Bar No. 359876)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          jglatt@bursor.com
          kvalenzuela@bursor.com
          rmartin@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE PRATT, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>BONAFIDE PROVISIONS, LLC,<br><br>                          Defendant. | Case No. 3:25-cv-01982-ABJ-KSC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff George Pratt ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Bonafide Provisions, LLC ("Bonafide" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel, and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1. This is a class action lawsuit concerning Defendant's false and misleading labeling and marketing on its Bonafide Provisions Frozen Organic Bone Broth Products (the "Products"[1]) manufactured, sold, and produced by Defendant, which claim to have 10 grams of protein per serving (the "Protein Representations").

2. Unfortunately for Plaintiff and similarly situated consumers, ConsumerLab testing of Defendant's 24 fluid oz Organic Beef Bone Broth—which Defendant claims contains 10 grams of protein per serving—found that the Product contained only 65% of the protein that Defendant claims is in the Product. Indeed, confirmatory testing conducted by Plaintiff's counsel found that the Product contained just 6.73 grams of protein per serving; 67% of what Defendant expressly represents is in its Product. As such, two separate sets of testing have found that Defendant's bone broth Product with 10 grams of protein is consistently underfilled by approximately 35%.

3. Accordingly, Plaintiff brings claims individually and on behalf of similarly situated purchasers of Defendant's Products for violations of (i) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (ii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iii) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iv) breach of express warranty; and (v) unjust enrichment.

---

[1] The Products include but are not limited to Bonafide Provisions' Organic Beef Bone Broth (frozen, 24 oz container) and Organic Chicken Bone Broth (frozen, 24 oz container).

**PARTIES**

4.      Plaintiff George Pratt is a citizen of California and resident of Modesto, California.  Plaintiff has been purchasing Defendant's 24 oz Organic Beef Bone Broth approximately twice a month for the last year.  As recently as April 2025, Plaintiff purchased this Product from Amazon from his home in Modesto, California.  Prior to purchasing Defendant's Beef Bone Broth Product, Plaintiff saw and reasonably relied on Defendant's affirmative representation that the Product contains 10 grams of protein per serving.  Plaintiff reasonably relied on this representation made on the Product's Amazon page and nutritional panel in choosing to purchase the Product.  Plaintiff understood Defendant's representation to mean exactly what Defendant claims: that the Product contains 10 grams of protein per serving.  This representation was part of the basis of the bargain in that he would not have purchased the Product or would not have purchased it on the same terms had he known Defendant's representation and warranty was untrue.  In making his purchase, Plaintiff paid a price premium for the Product.  As a direct result of Defendant's material misrepresentation, Plaintiff suffered, and continues to suffer, economic injuries.

5.      Plaintiff remains interested in purchasing Defendant's Products in the future.  However, Plaintiff is unable to determine if the Products contain the amount of protein Defendant claims.  So long as Defendant markets the Products as containing an amount of protein when the Products actually contain less than that stated amount, when presented with false or misleading information when shopping, Plaintiff will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitors' products.  Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products' protein content is accurately represented.

6.    Defendant Bonafide Provisions, LLC is a California limited liability company with its principal place of business in Carlsbad, California.  At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Products to consumers throughout the United States and California, including in this District.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed classes are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative classes, and most members of the proposed classes are citizens of states different from Defendant.

8.    First, the aggregate claims of all members of the proposed Nationwide Class and California Subclass exceed $5,000,000.  The Products at issue are sold in every state in the country and in nearly every major grocery store including Vons, Raley's, Sprouts, Albertsons, Safeway, Target, Smart & Final, Whole Foods, Costco, Publix, Kroger, Ralphs, Walmart, Gelson's, The Fresh Market, and Erewhon, among others.  Many of these grocery stores also sell the Products through their respective online marketplaces.  Additionally, the Products are sold online and shipped to every state in the country through Amazon.com.  According to Owler, Defendant's Products generate about $6.1 million in revenue.[2]  Plaintiff's good faith estimate for the aggregate claims of all members of the proposed classes considers the volume and scope of Defendant's Products' sales nationwide.[3]  Further, Defendant has

---

[2] OWLER, *Bonafide Provisions,*
https://www.owler.com/company/bonafideprovisions.

[3] "Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'"  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

conceded that the amount in controversy in this action is greater than $5,000,000, exclusive of interests and costs. Defendant does not dispute the amount in controversy. *See* Exhibit A.

9.      Second, given Defendant's revenue exceeds more than $6 million in sales from every state, and that the Products at issue concern Defendant's line of frozen bone broth products, it can be reasonably inferred that there are more than 100 members of the Classes, each.  Defendant's marketing, labeling, and advertising of the Products at issue occurred in California as well as at points of sale in grocery stores in the 49 other states and through online orders that were shipped into states including, but not limited to, California.

10.      Third, minimal diversity exists as alleged.  At least some members of the proposed classes are from states different than Defendant.  Plaintiff seeks to bring claims on behalf of two unnamed class members: A nationwide class and a California Subclass.  Class Members under CAFA are "the persons (named or unnamed) who fall within the definition of the proposed … class in a class action." 28 U.S.C. § 1332(d)(1)(D).  Because Defendant's Products are sold in California and the other 49 states,[4] there is at least one class member—as that term is defined under CAFA—who is a citizen of one of the 49 states other than California within the Nationwide Class.  This is necessarily so because the Products are sold at grocery stores that are not in California and are covered by the Nationwide Class.  For example, Defendant sells its Products at the Publix Supermarket chain.  Members of the Nationwide Class purchasing the Products in Publix—which has no stores in California—were exposed to the Protein Representations at issue.

---

[4] Though California is the most populated state in the U.S., it only makes up 11.9% of the country's population.  Accordingly, Class Members from California only comprise, at most, just about 12% of the Nationwide Class.  *See* INFO PLEASE, *What Are the 50 States In Order of Population*, https://www.infoplease.com/us/states/state-population-by-rank.  88% of Class Members of the Nationwide Class are from states other than California.

4

11.     The same is true for Wegmans Grocery stores which only has locations in New York state, Connecticut, D.C., Delaware, Maryland, Massachusetts, New Jersey, Maryland, North Caroline, Pennsylvania, and Virginia.[5]  Consumers in those states, who are subsumed within the Nationwide Class, cannot purchase the Products from California if they bought them at Wegmans.[6]

12.     Accordingly, minimal diversity exists under CAFA.  *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices.").  Based on these allegations, the class definitions represent sufficient minimal diversity as required under CAFA. The majority of class members are likely outside of California.  *See Mondragon v. Capital one Auto Fin.*, 736 F.3d 880, 881 (9th Cir. 2013).

---

[5] WEGMANS, *Find a Grocery Store New You,* https://www.wegmans.com/stores.
[6] WEGMANS, *Bonafide*, https://www.wegmans.com/shop/search?query=bonafide.

13.     This Court has general and personal jurisdiction over Defendant because Defendant is at home in this District as its headquarters are in Carlsbad, California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## **FACTUAL ALLEGATIONS**

### I.     PROTEIN AND BONE BROTH

15.     Protein is an essential macronutrient for overall health, muscle growth, bodily maintenance, and function.  Protein builds and repairs cells and body tissue, promotes immune responses, fluid balance, vision, hormone production, antibodies, and enzymes.[7]

16.     As such, the American Heart Association suggests that protein should account for 10% to 35% of one's daily caloric intake.[8]  This means someone who consumes 2,000 calories a day should be consuming 50-175 grams of protein a day.[9]

17.     Though most Americans may consume the recommended amount of protein a day through consumption of meat, dairy, beans, and nuts, many rely on additional sources of protein, like bone broth, to meet their protein intake goals.[10]

18.     For these reasons, bone broth has boomed in popularity.  From fitness

---

[7] FDA *Nutrition Facts Sheet – Protein* https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_October2021.pdf

[8] *Protein: What's Enough?* American Heart Association (last updated Aug. 28, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/nutrition-basics/protein-and-heart-health#:~:text=How%20much%20protein%20do%20you,daily%20calories%20come%20from%20protein.

[9] FDA *Nutrition Facts Sheet – Protein* https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_October2021.pdf.

[10] *Bone Broth Review,* ConsumerLab (May 14, 2025), https://www.consumerlab.com/reviews/bone-broth-review/bone-broth/?search=Kettle%20&%20Fire.

influencers using it to support muscle growth to Gweneth Paltrow's daily lunch,[11] bone broth has been hailed as a quality source of protein.

19.    Bone broth forms a stock often used for making soups, sauces, and gravies.  It can also be consumed as a drink.  Aside from flavor, bone broth provides nutrients, especially minerals, derived from animal tissues.[12]  Not surprisingly then, the bone broth industry is expected to generate a quarter of a billion dollars in 2025.[13]

20.    Defendant benefits from charging a substantial price premium for its Products.  For instance, other bone broth products on the market, which claim to have less protein, retail for significantly less than the Product Plaintiff purchased, which currently sells for $10.99 on Amazon.com ($0.46/oz).[14]

[11] Dear Media [@dearmedia], *#gwenethpaltrow shares her daily wellness routine on The Art of Being Well*, Tɪᴋ Tᴏᴋ, Mar. 13, 2023, https://www.tiktok.com/@dearmedia/video/7210104654460521774?is_from_webapp=1&web_id=7162329180090058286.

[12] Jon Johnson, *What are the benefits of bone broth?* Medical News Today (Mar. 13, 2023), https://www.medicalnewstoday.com/articles/323903.

[13] *See Bone Broth Market Size, Share, Growth, and Industry Analysis, By Type (Powder, Liquid, Tablet, and Bars), By Application (Fortified Foods, Fortified Beverages, Dietary Supplements, and Pharmaceuticals), and Regional Forecast to 2033*, Bᴜsɪɴᴇss Rᴇsᴇᴀʀᴄʜ Iɴsɪɢʜᴛs (last updated June 26, 2025), https://www.businessresearchinsights.com/market-reports/bone-broth-market-119047.

[14] **Compare** *Bonafide Provision Beef Bone Broth*, Amazon, https://www.amazon.com/Bonafide-Provisions-Beef-Broth-frozen/dp/B07D5NNP9P/ref=sr_1_6_f3_0o_wf?crid=L5BH4QTR67TX&dib=eyJ2IjoiMSJ9.PEOuk62zzjq7C-0ATI8ps8pcAnaDS5-RIXZKQrdFLFKnGxgxmBhsIUlo07mKIH8T6VJl8UmxjhPcV5FTS_uFiolnLPbxywosK0Ieq-q2m_LnGryjytnpJ6CjFj7g5s6_yx4Fhzr2tEX0alQsjNtFGCiFacn0tdeXRa2mLmZfKKIGGdxh60tiahgpD5AzZSnWQi-QsAtNBzHvwnSuCGhgttcspia-dP2g1iMuqgMWYpZeK3xSdAQel_1Xai-FqHDcoFUDj_Qe3DZwMzN-EyMRmzWzwhfGJyfvpSbvV_GvA18.cez45l0oY3YBu--WQN7jMdlfy-KUB8_H0EO1vxMpiSs&dib_tag=se&keywords=bonafide+bone+broth&qid=1752524131&sprefix=bonafide+bone+broth%2Caps%2C141&sr=8-6 (last accessed July 14, 2025) *with Swanson's 32 oz 100% Beef Broth,* Amazon, https://www.amazon.com/Swanson-Less-Sodium-Beef-Broth/dp/B000VDSY86/ref=sr_1_33?crid=2HOLX33I59911&dib=eyJ2IjoiMSJ9.-



## II.    MULTIPLE SOURCES FOUND DEFENDANT'S PRODUCT CONTAINS LESS THAN THE STATED AMOUNT OF PROTEIN

21.    Defendant represents in the nutrition facts of the packaging that its Organic Beef Bone Broth Product contains 10 grams of protein per serving.

22.    Defendant makes the same 10-gram protein claim on the landing page of its Amazon sales page:

k87jE2MSknqIJzUH-8S43wjaACkfTgragdPzNR0X-IAELZuybVT3QHuRokmuLdTrCx4Pb7sAC35fHYC0myLmsG1JeR_SVs3wuZAWPsND-_Lrp8DDWY0NdnBkt2ISymCwB8UzINIDzgfHLHp5WUDuiG_41bo3vIHjd_o1CiT_9KIDqYC3OGu5k0qEIzLU-A55EqZNgX3glDXXQCOIkMnnpGBbkfFdwgTTnrDKWY76T5ggMCMeeneprEUIj7mwpqOslLpZJPLjzYw6zX13H0vqvvNs4bvKFjtorjv0rTp0Nk.t25Wi08jXoJX-XkrbXQy7kUpJNHkvohsqfxjYuNzDOg&dib_tag=se&keywords=beef+bone+broth&qid=1752622568&sprefix=beef+bone+broth%2Caps%2C154&sr=8-33 (last accessed July 28, 2025) (containing 3 grams of protein per serving, retailing at $2.52 or $0.08/oz).





23.    Unfortunately for Plaintiff and similarly situated consumers, however, this is not true.  First, in April 2025, independent third-party testing by ConsumerLab (an organization that tests consumer product claims) tested the protein claims of Defendant's 24 fluid oz Organic Beef Bone Broth Product.  ConsumerLab's independent lab testing analyzed total protein by combustion (AOAC 992.15) and collagen calculated from hydroxyproline by High Performance Liquid Chromatography (HPLC) (AOAC 990.26).[15]  ConsumerLab's testing found the Product contained only 6.5 grams of protein per serving: ***only about 65% of the protein content that Defendant claims.***[16]  According to ConsumerLab, these results were confirmed by a second laboratory.

24.    Shortly after, Plaintiff's counsel conducted testing that corroborated these results.  Plaintiff's counsel's testing, conducted by an ISO/IEC 17025:2005

---

[15] Mark L. Anderson, Ph.D., *Bone Broth Review: How Products Were Evaluated*, Consumer Lab, https://www.consumerlab.com/methods/bone-broth-review/bone-broth/.

[16] *Id.*

accredited laboratory using AOAC methodology, found that the Product contained only 6.73 grams of protein, only about 67% of the represented amount.

[SPACE INTENTIONALLY LEFT BLANK]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    THE PRODUCT PLAINTIFF PURCHASED IS SUBSTANTIALLY SIMILAR TO DEFENDANT'S OTHER PROTEIN-FILLED BONE BROTH PRODUCTS

25.     Plaintiff purchased Defendant's frozen 24 oz container of "Organic Beef Bone Broth" (pictured below), which is part of Defendant's frozen organic line of bone broth products.

 

26.     Defendant's frozen "Organic Chicken Bone Broth" is substantially similar to the Product Plaintiff purchased.  Both Products are packaged nearly identically with the same protein content representations (10 grams per one cup serving).

CASE NO.: 3:25-CV-01982-ABJ-KSC




27.     Generally, bone broth is made by simmering the bones and connective tissue of animals.[17]  That includes Defendant's Products, which, as both Products' labels state, are "traditionally made" by being "slow simmered for 18-20 hours," made from bones, with "filtered water" and contain the same ingredient list. Additionally, each are "Fresh Frozen [with] no stabilizers" and have the same use recommendations: "defrost, heat, and enjoy."  Accordingly, both Products are manufactured, processed, and consumed in the same way and are therefore susceptible to the same inference that each suffer from the same defect.

28.     As such, Plaintiff has standing to bring claims on behalf of purchasers of these variations of the Product he purchased as they are substantially similar to his.

---

[17] Kayla McDonnell, *How to Make Bone Broth, Plus Health Benefits*, Healthline (Jan. 23, 2025), https://www.healthline.com/nutrition/bone-broth.

## IV.    DEFENDANT'S PRODUCTS ARE MISBRANDED

29.    Under the FMIA and PPIA, a food product is misbranded when its labeling is false or misleading.  21 U.S.C. §§ 601(n)(1), 453(h)(1).  As such, a product that overstates the amount of protein in its Nutrition Facts Panel is misbranded within the meaning of 21 U.S.C. §§ 601(n)(1), 453(h)(1)..  FSIS regulations implementing this provision require that the declared amount of protein reflect the actual content of the product and meet minimum accuracy standards.  *See* 21 C.F.R. §§ 317.8(a), 381.129(a); *see also* 9 C.F.R. §§ 317.309, 381.409.

30.    These regulatory schemes provide that for nutrients such as protein, the actual amount in the product must be no less than 80 percent of the value declared on the Nutrition Facts label.  9 C.F.R. § 317.309(h); 9 C.F.R. § 381.409(h).  If laboratory analysis shows that the protein content falls below this threshold, the food is deemed misbranded.  These regulatory requirements apply regardless of whether any front-of-package protein claim is made; they govern the Nutrition Facts Panel itself.  Defendant's Products fail to meet these requirements because the actual protein content is materially lower than the amount stated on the Nutrition Facts label.

31.    California law independently prohibits false or misleading food labeling.  California's Health and Safety Code provides that "[a]ny food is misbranded if its labeling is false or misleading[.]"  Cal. Health & Safety Code § 110660.  California also incorporates federal food labeling requirements, including those governing meat and poultry products regulated by the FSIS.  *See* Cal. Health & Safety Code § 110100(a).

32.    Defendant's Products' labels, which Plaintiff and Members of the Classes reviewed and relied on when making their purchases, materially overstate the protein content in the Nutrition Facts Panel and fail to comply with applicable federal and state regulations.  As a result, the Products are misbranded under both

federal and California law.[18]

33.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class Members who suffered an injury in fact and lost money as a result of Defendant's wrongful conduct.

## V.    DEFENDANT'S MISREPRESENTATIONS INJURED PLAINTIFF AND CLASS MEMBERS

34.    Defendant's Products do not contain, or risk not containing, the represented quantity of protein.  Therefore, Defendant's representations are false and misleading and consumers, like Plaintiff, were injured.

35.    The amount of protein in the Products is material to consumers.  It should come as no surprise that "'[c]onsumers often rely on [] claims for health-related information, and this information can affect their evaluations and choices.'"[19] This is underscored by consumer research specific to protein claims.  "According to an Innova Market Insights … global survey in 2022, 1 in 5 consumers said they changed their protein intake in the past 12 months, with 17% seeking high-protein products.  Protein is now a key selling point.  Innova report[ed] a 10% [compound annual growth rate] in the number of food and beverage new-product launches making protein claims in 2017-2022."[20]

36.    This trend is particularly true for bone broth products.  As BlueBird Provisions, a producer of bone broth products explained, "[b]one broth protein

---

[18] Plaintiff does not ground his claims on violations of federal regulations.  His claims are based on violations of California consumer protection statutes.

[19] Lucas Cuni-Mertz, et al., *How Consumers Are Swayed By Products' Nutrient Content and Processing Claims*, UNIV. OF ARKANSAS, SAM M. WALTON COLLEGE OF BUS. (Nov. 15, 2021) *available* https://walton.uark.edu/insights/posts/how-consumers-are-swayed-by-products-nutrient-content-and-processing-claims.php.

[20] Jennifer Grebow, *Protein Attracts New Customers: 2023 Ingredient Trends for Food, Drinks, Dietary Supplements, and Natural Products*, NUTRITIONAL OUTLOOK (Jan. 25, 2023) *available* https://www.nutritionaloutlook.com/view/protein-attracts-new-customers-2023-ingredient-trends-for-food-drinks-dietary-supplements-and-natural-products.

shakes have become increasingly popular among health-conscious consumers due to their numerous health benefits."[21]  By way of example, during the COVID-19 pandemic, the bone broth market "witnessed a spike in the demand for animal protein-infused products, which boosted the demand for bone-based broths.  Thus, to maintain immunity and overall health status, bone-based broths were consumed at a higher level in the pandemic phase."[22]  Bone broth has remained a consistent part of health conscious, protein-focused diets.

37.    Given consumers' interest in protein-emphasized products, Defendant sought to capitalize on this desire by representing to consumers that its Products were a good source of protein.  Consumers lack the ability to test or independently ascertain or verify whether the Products contain the true levels of protein Defendant claims.  Thus, consumers rely on Defendant to truthfully and honestly report the protein content of the Products on the packaging.

38.    Yet, when consumers look at the Products' packaging, they are led to believe that they have significantly more protein than they actually contain because of what Defendant represents.

## FED. R . CIV. P. 9(b) ALLEGATIONS

39.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To the extent necessary, as detailed in the

---

[21] Connor Meakin, *Bone Broth Market Size,* BLUEBIRD PROVISIONS, *available* https://bluebirdprovisions.co/blogs/news/bone-broth-market-size#:~:text=Growth%20in%20Bone%20Broth%20Protein%20Market,increasingly%20turning%20to%20nutritional%20supplements.

[22] *Bone Broth Market Size, Share & COVID 19 Impact Analysis, By Type (Chicken, Beef, Turkey, and Others), Distribution Channel [Foodservice and Retail (Supermarkets/Hypermarkets, Specialty Stores, Online Retail and Others)], and Regional Forecast, 2023-2030*, FORTUNE BUSINESS INSIGHTS, available https://www.fortunebusinessinsights.com/bone-broth-market-106041.

CASE NO.: 3:25-CV-01982-ABJ-KSC

paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

40.    **WHO:** Defendant Bonafide Provisions, LLC.

41.    **WHAT:** Defendant's conduct was, and continues to be, deceptive because it is deceiving consumers into believing that the Products contain more protein per serving than the Products contain, or because the Products risk containing meaningfully less protein than represented per serving and container. Defendant failed to accurately fill the Products with the correct amount of protein it listed on the Products' nutritional label. Defendant knew or should have known, as the manufacturer and marketer of the Products with superior knowledge of the composition of its Products, that this information is material to reasonable consumers. Yet, Defendant misrepresented on the labeling of its Products that they contain more protein than they actually do and has failed to ensure the Products in fact contain the amount of protein Defendant warrants. Defendant knew or should have known that the Products contained less protein than labeled because Defendant is the manufacturer of the Products and has quality control testing protocols set in place that should have alerted Defendant of the underfilled nature of the Products' protein content.

42.    **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale. Defendant's false and misleading protein representation was printed on the Products' nutritional label and online sales pages for consumers to view and rely on.

43.    **WHERE:** Defendant's misrepresentation was made on the Products' package nutritional label and was thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Products are sold online and in brick-and-mortar stores nationwide. Defendant's underfill of the protein content occurred in Defendant's manufacturing facilities.

44.     **HOW:** Defendant misrepresented on the Products' nutrition label that they contain more protein per serving when separate sets of independent testing revealed that they contain less protein than represented.  And as discussed in detail throughout the Complaint, Plaintiff and Class Members read and relied on Defendant's misrepresentation regarding the protein content before purchasing the Products and in choosing to purchase the Products.

45.     **WHY:** Defendant misrepresented the amount of protein it includes in its Products.  This representation was material in that it induced consumers like Plaintiff to purchase the Products for their purported nutritional benefit while charging consumers a price premium.  Accordingly, due to the representation, Plaintiff and Class Members paid a price premium for the Products that they would not have, or would have paid substantially less for, had the Products not been, or risked not being, deficient in protein composition contrary to Defendant's express representation.  As such, Defendant unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiff and the Class Members.

46.     **INJURY:** Plaintiff and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Products, or would not have purchased them on the same terms, had they known that Defendant's Products contain less protein than Defendant expressly represents on the packaging.

## CLASS ALLEGATIONS

47.     Plaintiff seeks to represent a nationwide class defined as:

All persons in the United States who purchased the Products for personal or household use during the statute of limitations period (the "**Nationwide Class**").

48.     Plaintiff also seeks to represent a California Subclass defined as:

All Class members who purchased the Products for personal or household use in California during the statute of limitations period (the "**California Subclass**").

49.     Collectively, the Nationwide Class and California Subclass shall be referred to as the "Classes."

50.     Excluded from the Classes are (1) Defendant and any entities in which Defendant has a controlling interest; (2) Defendant's agents and employees; (3) any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staff and immediate families; (4) Plaintiff's Counsel; and (5) Defendant's Counsel.

51.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or narrowed at class certification.

52.     **Numerosity.**  The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates there are hundreds of thousands of members in the Classes.  Plaintiff does not know the exact number of members in the proposed Classes but reasonably believes, based on the scale of Defendant's business, that the Classes are so numerous that individual joinder would be impracticable.

53.     ***Existence and Predominance of Common Questions of Law and Fact***.   Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether the Products contained the stated amount of protein;

(b)     Whether Defendant knew or should have known the Products had less protein than represented;

(c)     Whether Defendant is liable to Plaintiff and the Classes for unjust enrichment;

(d)     Whether the underfill of protein renders the Products misbranded;

(e)     Whether Defendant violated the state consumer protection statutes alleged herein;

(f)     Whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss;

(g)     Whether a reasonable consumer would consider the amount of protein in the Products to be material;

(h)     Whether Plaintiff and the Classes are entitled to restitution and disgorgement from Defendant; and

(i)     Whether the packaging for the Products is deceptive.

54.     **Typicality.** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff, like all members of the Classes, purchased the Products, which are underfilled with protein, in reliance on the representation and warranty described above. Plaintiffs and members of the Classes suffered a loss as a result of the purchases and so were injured by Defendant's misconduct in the very same way. In other words, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

55.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes.

56.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.

Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.   By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation Of California's Consumer Remedies Act ("CLRA"),**
**California Civil Code §§ 1750,** *et seq.*
**(On Behalf of Plaintiff, the Nationwide Class, and California Subclass)**

57.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

58.    Plaintiff brings this claim individually and on behalf of the Members of the Classes against Defendant.

59.    Plaintiff and other Members of the Classes are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Products, Plaintiff and the Classes engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

60.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).  Defendant's Products are a "good" within the meaning of Cal. Civ. Code § 1761(a).

61.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

62.    Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

63.    Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

64.    Defendant violated these provisions by misrepresenting the amount of protein contained in the Products.

65.    Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

66.    Plaintiff and the Members of the Classes suffered economic injury as a direct and proximate result of Defendant's violation because: (a) they would not have purchased the Products on the same terms if they had known that the Products did not contain the amount of protein Defendant affirmatively stated; (b) they paid a price premium compared to products without the misrepresentation alleged herein; and (c) the Products did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

67.    On or around May 27, 2025, prior to the filing of this complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant has not taken corrective action.

68.    Plaintiff and Members of the Classes seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
### Violation Of California's Unfair Competition Law, ("UCL"),
### California Civil Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)

69.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

70.    Plaintiff brings this claim individually and on behalf of the Members of the Classes against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

71.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

72.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

73.    Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** by misbranding its Products in violation of California law, Cal. Health & Safety Code §§ 110660 and 110100(a).

74.    Finally, Defendant engaged in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

75.    In addition, as described more fully above, Defendant's misleading marketing, advertising, packaging, and labeling of its Products are likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, *inter alia*, making the presentation and omission of material facts, as set forth more fully above, thereby violating the common law.

76.    Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous.  The gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive practices led consumers to purchase the Products over other comparable bone broth products that properly represent their protein content.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on the Products' labels, consumers could not have reasonably avoided such injury.

77.    Plaintiff and the Members of the Classes suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair packaging about the defective nature of the Products.

78.    Finally, Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendant's claim and misleading statement concerning the Products' protein content, as more fully set forth above, is false, misleading and likely to deceive the consuming public.

Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Members of the Classes are

23

inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

79.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Members of the Classes seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

## COUNT III
### Violation Of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.
### (On Behalf Plaintiff, the Nationwide Class, and the California Subclass)

80.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

81.    Plaintiff brings this claim individually and on behalf of the Members of the Classes against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

82.    The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

83.    Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its Products by representing on the Products' packaging that the Products contain more protein per serving than the Products actually contain.

24

84.    Defendant knew or should have known that its advertising claims are misleading and/or false.

85.    Defendant knew or should have known, through the exercise of reasonable care, that its representation was false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

86.    Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.  Plaintiff and the Members of the Classes were injured in fact and lost money and property as a result.

87.    The misrepresentation and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

88.    As a result of Defendant's wrongful conduct, Plaintiff and the Members of the Classes lost money in an amount to be proven at trial.  They are therefore entitled to restitution as appropriate for this cause of action.

89.    Plaintiff and the Members of the Classes seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; injunctive relief, reasonable attorneys' fees, and all other relief that the Court deems proper.

90.    Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to the Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

91.    Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff and the Members of the Classes would be left without the parity in purchasing power to which they are entitled.

### COUNT IV
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class)

92.    Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

93.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

94.    Plaintiff brings this claim under the laws of the State of California.

95.    In connection with the sale of the Products, Defendant issued written express warranties in that Defendant affirmatively warranted that the Products contained a specific amount of protein.  Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, expressly warranted that the Products are fit for their intended purpose by making promises and affirmations of fact on the Products' packaging.

96.    The affirmation of fact and promise made by Defendant to Plaintiff and the Nationwide Class regarding the Products became part of the basis of the bargain between Defendant, Plaintiff, and the Members of the Nationwide Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.  However, the Products do not, in fact, contain the amount of protein promised on the packaging.

97.    Plaintiff and members of the Class suffered economic injury as a direct and proximate result of Defendant's breach of warranties because: (a) they would not have purchased the Products on the same terms if they had known that the Products

had been falsely labeled as alleged herein; (b) they paid a price premium for the Products based on Defendant's express warranties; and (c) the Products did not have the characteristics, uses, or benefits as promised by Defendant on the packaging. As a result, Plaintiff and members of the Nationwide Class have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as sold.

## COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

98.    Plaintiff hereby re-alleges and reincorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

99.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

100.    Plaintiff brings this claim in the alternative to the extent allowed under Fed. R. Civ. P. 8(d)(2).

101.    Plaintiff brings this claim under the laws of the State of California.

102.    Plaintiff and Members of the Nationwide Class conferred a benefit in the form of monies paid to Defendant by purchasing protein-underfilled Products.

103.    Defendant voluntarily accepted and retained this benefit.

104.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendant in the packaging of the Products. These misrepresentations caused injuries to Plaintiff and Nationwide Class Members because they would not have purchased the Products if the true facts had been known.

105.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for protein-underfilled Products, it would be unjust and inequitable for Defendant to retain it without paying the value thereof. Accordingly,

Plaintiff and members of the Nationwide Class seek restitution as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative for the Classes, and naming Plaintiff's attorneys as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class and California Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  February 13, 2026          **BURSOR & FISHER, P.A.**

By:   /s/ *L. Timothy Fisher*
L. Timothy Fisher

1

2
                     L. Timothy Fisher (State Bar No. 191626)

3
                     Joshua B. Glatt (State Bar No. 354064)

                     Karen B. Valenzuela (State Bar No. 357231)

4
                     Ryan B. Martin (State Bar No. 359876)

5
                     1990 North California Blvd., 9th Floor

                     Walnut Creek, CA 94596

6
                     Telephone: (925) 300-4455

7
                     Facsimile: (925) 407-2700

                     E-mail: ltfisher@bursor.com

8
                               jglatt@bursor.com

9
                               kvalenzuela@bursor.com

                               rmartin@bursor.com

10

11
                     *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff George Pratt who resides in Modesto, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) because Defendant is at home in the Southern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 13th day of February, 2026.

*/s/ L. Timothy Fisher*
L. Timothy Fisher