UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE PRATT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BONAFIDE PROVISIONS, LLC,<br><br>Defendant. | Case No.: 25-cv-01982-ABJ-GC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 16)** |

Before the Court is Defendant Bonafide Provisions, LLC's ("Bonafide") Motion to Dismiss Plaintiff George Pratt's ("Plaintiff") First Amended Complaint ("FAC"). (Doc. No. 16.) Plaintiff filed an opposition (Doc. No. 20), to which Bonafide replied (Doc. No. 21). For the reasons set forth below, the Court **DENIES** Bonafide's Motion to Dismiss.

## I. BACKGROUND

### A. Procedural History

On August 1, 2025, Plaintiff filed his Class Action Complaint ("Complaint"), asserting five causes of action: (1) violation of California's Consumer Remedies Act ("CLRA"); (2) violation of California's Unfair Competition Law ("UCL"); (3) violation of California's False Advertising Law ("FAL"); (4) breach of express warranty; and (5) unjust enrichment. (Doc. No. 1.) On August 25, 2025, Bonafide moved to dismiss all claims

pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6) and 12(b)(1). (Doc. No. 9.) The Court subsequently *sua sponte* dismissed the case for lack of subject matter jurisdiction, granting Plaintiff leave to amend and denied as moot Bonafide's Motion to Dismiss. (Doc. No. 14.) On February 13, 2026, Plaintiff filed the operative FAC asserting the same five causes of action. (Doc. No. 15.) Bonafide again moves to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). (Doc. No. 16.)

**B. Factual History**

The FAC alleges that Plaintiff purchased Bonafide's twenty-four-ounce Organic Beef Bone Broth (the "Product") from Amazon approximately twice a month for a year. (Doc. No. 15 ¶ 4.) Bonafide manufactures, sells, and produces Bonafide Provisions' Frozen Organic Bone Broth Products, including twenty-four-ounce containers of beef bone broth and chicken bone broth (the "Products"). (*Id.* ¶ 1.) Bonafide's frozen beef and chicken bone broth products claim to contain ten grams of protein per serving on the Products' nutritional panel and Amazon sales page. (*Id.* ¶ 2.) Plaintiff alleges that he paid a premium price for the Product based on the Product's representation that it contained ten grams of protein per serving. (*Id.*) Plaintiff alleges that other bone broth products with less protein retail for less money than Bonafide's Products. (*Id.* ¶ 20.) Bonafide's Products are sold both online and in stores nationwide. (*Id.* ¶ 43.)

In April 2025, ConsumerLab, an independent third-party testing organization that tests consumer products, found that Bonafide's twenty-four fluid ounce Organic Beef Bone Broth Product contained 6.5 grams of protein per serving, rather than the ten grams of protein stated on the Product's packaging. (*Id.* ¶ 23.) ConsumerLab's testing included analysis of "total protein by combustion (AOAC 992.15) and collagen calculated from hydroxyproline by High Performance Liquid Chromatography (HPLC) (AOAC 990.26)." (*Id.*) Plaintiff alleges that ConsumerLab confirmed this result with a second laboratory. (*Id.*) Plaintiff further alleges that Plaintiff's counsel conducted testing that corroborated these results through an ISO/IEC 17025:2005 accredited laboratory using AOAC methodology, finding 6.73 grams of protein in the Product. (*Id.* ¶¶ 23–24.) Plaintiff asserts

these tests indicate Bonafides's Products are "consistently underfilled by approximately 35%," so the Products' packaging misrepresents the amount of protein per serving by containing about 65% of the purported ten grams of protein. (*Id.* ¶¶ 2–4.)

Plaintiff alleges he suffered, and continues to suffer, economic injuries because of this misrepresentation. (*Id.* ¶¶ 4–5.) Plaintiff alleges he reasonably relied on Bonafide's representation that the Product contained ten grams of protein per serving when he chose to purchase the product, and he "would not have purchased it on the same terms" if he knew it did not contain ten grams of protein per serving. (*Id.* ¶ 4.) Although Plaintiff would like to purchase the Product in the future, Plaintiff asserts he will not be able to make an informed decision regarding purchase of Bonafide's Products if the protein amount is, or may be, inaccurate. (*Id.*) Plaintiff therefore contends that he is "likely to be repeatedly misled by [Bonafide's] conduct" until Bonafide can ensure accurate protein representation of the Products. (*Id.*)

Plaintiff asserts that Bonafide's frozen Organic Chicken Bone Broth is substantially similar to the beef bone broth Product Plaintiff purchased. (*Id.* ¶ 26.) Thus, Plaintiff alleges he has standing to bring claims on behalf of purchasers of both frozen chicken and beef bone broth products. (*Id.* ¶¶ 26–28.) Plaintiff argues that because both Products are "manufactured, processed, and consumed in the same way," they are "susceptible to the same inference that each suffer from the same defect." (*Id.* ¶ 27.)

Finally, Plaintiff seeks to represent a nationwide class defined as "all persons in the United States who purchased the Products for personal or household use during the statute of limitations period (the "Nationwide Class")." (Doc. No. 15 ¶ 47.) Plaintiff also seeks to represent a California subclass defined as "[a]ll Class members who purchased the Products for personal or household use in California during the statute of limitations period (the "California Subclass")." (*Id.* ¶ 48.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Article III, Section 2 of the Constitution limits federal courts to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). This limitation means the plaintiff must have standing to sue. *Id.* at 338. To establish standing, a plaintiff must demonstrate the "irreducible constitutional minimum" of: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stage of litigation.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561).

A motion to dismiss for lack of standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010) (noting that "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss"). Such a motion can be facial or factual in nature. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss challenges a complaint's legal sufficiency and allows a court to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss the complaint as a matter of law if claims do not establish a cognizable legal theory or if claims do not provide sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint at the pleading stage does not need "detailed factual allegations," it must go beyond the "speculative level" such that it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545–47 (2007). A claim is facially plausible when the factual content of the plaintiff's claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct charged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (citation omitted). Thus, conclusory statements will not suffice. *Id.* ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

The Court accepts a complaint's allegations as true in the light most favorable to the plaintiff. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016). In general, district courts may not consider material outside the pleadings when assessing a complaint. Fed. R. Civ. P. 12(b)(6). However, two distinct exceptions to this rule—the incorporation-by-reference doctrine and judicial notice—allow district courts to consider materials that are not included in the complaint, "but each does so for different reasons and in different ways," and should therefore not be conflated as one. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

**C. Federal Rule of Civil Procedure 9(b)**

A party that alleges fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9. However, conditions such as "malice, intent, knowledge, and other conditions of a person's mind" may be addressed generally. *Id*. To allege with particularity, a plaintiff must state the "'who, what, when, where, and how'" of

the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, the plaintiff must establish both "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*.

## III. JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

In addition to its motion to dismiss (Doc. No. 16), Bonafide seeks judicial notice of two ConsumerLab.com webpages (the "Webpages") which contain matters referred in Plaintiff's FAC. (Doc. No. 16-1.) Plaintiff does not oppose the request. (*See generally* Doc. No. 20.)

### A. Legal Standard

Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may also consider documents incorporated by reference in the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). This "incorporation by reference" doctrine can apply to printed matter as well as web pages. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### B. Discussion

Bonafide asserts that the Websites are judicially noticeable because they are incorporated by reference in Plaintiff's FAC. (Doc. No. 16-1.) Bonafide reasons that the Websites are "expressly referred to and relied on" in Plaintiff's FAC and Bonafide alleges this sufficient for judicial notice. (Doc. No. 16-1.) Bonafide contends that courts often take judicial notice of websites, such as the Websites from ConsumerLab.com, when the "incorporation by reference" doctrine is met. (*Id.* at 4–5.) Bonafide argues that is the case here. (*Id.*)

However, judicial notice and the doctrine of incorporation by reference are distinct from one another. *Khoja*, 899 F.3d at 998. Although they both "permit district courts to consider materials outside a complaint," judicial notice and the incorporation-by-reference doctrine both "do[] so for different reasons and in different ways." *Id.* To satisfy the requirements for judicial notice, Bonafide must meet the requirements outlined in Rule 201, not the requirements for the incorporation-by-reference doctrine. *Id.* Bonafide fails to meet this standard. Bonafide does not provide a factual basis to establish that the Websites are either generally known or that their accuracy cannot be reasonably challenged. (Doc. No. 16-1.) Furthermore, in *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, the case Bonafide cites as representative of a court granting judicial notice of ConsumerLab.com, the court granted admission of the ConsumerLab.com article under the doctrine of incorporation by reference, rather than judicial notice. *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-CV-03862-HSG, 2024 WL 1643696, at *3 (N.D. Cal. Apr. 16, 2024). Thus, the use of *Hayden* in support of Bonafide's request for judicial notice is misplaced. The Court therefore **DENIES** Bonafide's request for judicial notice.

The Court turns to whether consideration of the Websites is proper pursuant to the doctrine of incorporation by reference. The incorporation-by-reference doctrine allows courts to consider documents as though they were attached to the complaint when the plaintiff refers to the document "extensively" or the document "forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 907–08. Here, the FAC refers to the Websites from ConsumerLab.com to form the basis of Plaintiff's claims. (Doc. No. 15 ¶¶ 2, 23.) Plaintiff relies on the Websites to argue that the bone broth Products contain less protein than advertised. (*Id.*) Plaintiff includes counsel's separate testing as additional evidence, but throughout the FAC, Plaintiff identifies the Websites as the primary resource to support the lower protein level allegations. (*Id.*) Although Plaintiff does not attach the Websites to the FAC, Plaintiff incorporates the Websites by reference via footnotes throughout the FAC. (*Id.)* Thus, the Court finds the Websites are incorporated by reference.

# IV. DISCUSSION

## A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

Bonafide argues that Plaintiff lacks standing to bring his claims. Specifically, Bonafide argues that (1) Plaintiff does not plausibly plead that any Bonafide product contains less than ten grams of protein and (2) Plaintiff lacks standing to sue over products he did not purchase. (Doc. No. 16 at 19–24.) The Court finds these arguments unpersuasive and will deny Bonafide's motion to dismiss on standing grounds.

First, Bonafide asserts that Plaintiff does not plausibly plead that any of Bonafide's products contain less than ten grams of protein because all testing provided by Plaintiff is facially unreliable. (Doc. No. 16 at 17–18.) Bonafide highlights ConsumerLab.com's testing of just one beef and one chicken bone broth product, limited information regarding testing, and ConsumerLab.com's disclaimer that it "'cannot assure the accuracy of information' in its own reports." (*Id.* at 17 (quoting Declaration of Melanie A. Ayerh ("Ayerh Decl.") ¶ 2; Ex. 1 at 17).) Bonafide further alleges that Plaintiff's counsel's independent testing similarly lacks sufficient details by not disclosing what type of product was tested, whether it was the same type of product Plaintiff purchased, and the methods of testing employed. (*Id.* at 18.) Bonafide therefore argues that "Plaintiff has not plausibly alleged that any significant number of Bonafide lots or batches—and certainly not the specific Product he purchased—contained less than the labeled 10 grams of protein." (*Id.* at 22.) Rather, Bonafide asserts that, "[a]t most," there is a risk of the Products containing less than ten grams of protein, which Bonafide argues is not sufficient to establish concrete injury. (*Id.*)

The Ninth Circuit has consistently held that economic injury resulting from a plaintiff paying more for a product than they would have otherwise is sufficient to establish Article III standing when overpayment is due to a defendant's false or misleading

representations.[1] Plaintiff asserts he would not have purchased the product at its higher price point had he known the product did not contain, or risked not containing, ten grams of protein. (Doc. No. 15 ¶¶ 4–5, 34.) Plaintiff therefore establishes economic injury. The Ninth Circuit has also established that a facial attack at this stage requires the Court to "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). This "plausibility standard" is not heightened to the requirement of "probability," but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 545). Here, Plaintiff has provided more than a "sheer possibility" that the Products contain less than ten grams of protein by including test results from ConsumerLab.com and Plaintiff's own testing. (*See* Doc. No. 15 ¶¶ 23–24.) Plaintiff has therefore supplied facts sufficient to plausibly plead, beyond a "sheer possibility," that Bonafide's Products contains less than ten grams of protein.

Next, Bonafide argues that Plaintiff fails to plead he personally purchased a Product containing less protein than promised because he does not allege he tested the specific bone broth he purchased. (Doc. No. 16 at 22–24.) This argument is unavailing. Bonafide does not cite any Ninth Circuit decision which would require Plaintiff to test the exact product

---

[1] *See, e.g.*, *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product."); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) ("[Plaintiffs] claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law. We agree with plaintiffs that these are actual and concrete economic injuries."); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("Where, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so" they have suffered an Article III injury in fact" (quoting *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 595 (9th Cir. 2012)); *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1147 (9th Cir. 2024) ("[T]hese allegations outline a theory of economic injury that qualifies as an injury in fact under established Article III standing caselaw.")

he purchased. Rather, many courts in this circuit have held that a plaintiff need not test the particular sample he or she consumed. *See, e.g.*, *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023) ("Plaintiffs need not allege that the specific Products they purchased had unsafe levels of lead and/or cadmium, but may simply aver facts from which this Court can make such reasonable inference.") (internal quotation marks omitted); *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1188 (S.D. Cal. 2023) (holding that the plaintiff sufficiently alleged injury in fact despite not alleging she tested the particular product she purchased); *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 941 (C.D. Cal. 2025), *adopted*, No. 24-cv-7873-GW-BFMX, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025).

Finally, Bonafide argues that because Plaintiff only purchased Bonafide's frozen organic beef bone broth product, he does not have standing to pursue a claim on behalf of consumers who purchased chicken bone broth products. (Doc. No. 16 at 16, 22–23.) Bonafide asserts that the products are not substantially similar. (*Id.*) Bonafide also contends that ConsumerLab.com's testing of its chicken product reported higher protein levels than displayed on the product's label. (*Id.* at 16–17, 24.)

Although the Ninth Circuit has not established controlling authority regarding whether or not a plaintiff may have standing for products they did not purchase, *see Hayden*, 2024 WL 1643696, at *5 (citations omitted), a majority of courts have found that a plaintiff has standing to assert claims based on products the plaintiff did not personally purchase on behalf of unnamed class members when "the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). When considering standing, courts have found substantial similarity when three conditions are met: "(1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar." *Hayden*, 2024 WL 1643696, at *5. Courts have therefore found that standing is met at the motion to dismiss stage when the alleged misrepresentation is the same, *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890–91 (N.D. Cal. 2012),

and the products are not so dissimilar as to be "a wide range of . . . products . . . which bear little similarity." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20).

Here, both the beef bone broth product and chicken bone broth product make the same claim (to contain ten grams of protein), and both Products are physically similar in that they are frozen bone broth products of the same consistency and volume. (Doc. No. 15 ¶¶ 1, 9, 25–27.) Therefore, Plaintiff alleges the same misrepresentation for physically similar products, satisfying the requirements for sufficient similarity at the motion to dismiss stage. *See Hayden*, 2024 WL 1643696, at *5.

Plaintiff has sufficiently alleged an economic injury-in-fact, and Bonafide does not dispute causation or redressability. The Court therefore **DENIES** Bonafide's Motion to Dismiss this action for lack of Article III standing.

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

The Court now turns to the legal sufficiency of the Plaintiff's claims. Bonafide argues (1) Plaintiff does not plead fraud with specificity under Federal Rule of Civil Procedure 9(b), (2) Plaintiff's claims fail under the Reasonable Consumer Standard, (3) Plaintiff cannot pursue equitable relief because he has an adequate remedy at law, and (4) Plaintiff's nationwide class allegations are deficient. (Doc. No. 16 at 24–39.) The Court will address each of Bonafide's arguments in turn.

#### 1. Plaintiff Pleads Fraud with Specificity under Rule 9(b)

Defendant argues that Plaintiff must satisfy the heightened pleading requirements of Rule 9(b) because Plaintiff "alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim." (Doc. No. 16 at 24) (cleaned up). Plaintiff does not contest the requirement of the heightened pleading standard, but argues that the FAC meets that standard. The Court will therefore analyze whether Plaintiff's allegations are sufficient under Rule 9(b)'s heightened pleading requirement to plausibly allege a unified course of fraudulent conduct.

First, Bonafide argues that Plaintiff fails to allege with particularity under Rule 9(b)'s heightened standard by not specifying "why" or "how" Plaintiff believes the Product he purchased contained less than ten grams of protein. (*Id.* at 25.) Bonafide points to "the unspecified nature of the ConsumerLabs.com testing, the absence of detail supporting the purported 'independent testing' conducted by Plaintiff's counsel, and the fact that ConsumerLabs.com testing showed the Chicken Product to contain more protein than stated on its label" as reasoning for why this standard is not met. (*Id.*)

In response, Plaintiff argues that the details alleged in the FAC are specific enough to give Bonafide notice of misconduct, as "'absolute particularity'" is not required, and challenges to the claim's merits and a test's validity need not be addressed at this stage. (Doc. No. 20 at 25) (citations omitted). Additionally, Plaintiff notes the heightened protein values of the Chicken Product arose from a different line of products, not the frozen Products at issue here. (*Id.* at 15 n.3, 18 n.4.)

The Ninth Circuit has established that, under Rule 9(b), a plaintiff must allege fraud with enough specificity "to give defendants notice of the particular misconduct" so defendants "can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and citations omitted). Allegations of fraud must therefore "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citations omitted). Sufficient details to establish specificity include the "time, place and nature of the alleged fraudulent activities," *Semegen v. Weidner*, 780 F.2d 727, 735 (9th Cir. 1985), such that "the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). Here, Plaintiff has supplied the "who" of the fraud (Bonafide); the "what" (Bonafide's representation that its Products contain ten grams of protein); the "when" (date of testing and purchase occurred in April 2025); the "where" (the location of Plaintiff's purchase: Modesto, California); and the "how" (the nature of the alleged fraud: misrepresentation of the ten grams of protein in Bonafide's Products

discovered by testing). (Doc. No. 15 ¶ 4.) Plaintiff also provides the method of testing,[2] which "is a sufficiently particularized detail" to satisfy Rule 9(b). *Prescott v. Saraya USA, Inc.*, No. 23-cv-00017-AJB-MMP, 2025 WL 1361486, at *4 (S.D. Cal. May 9, 2025) (finding reference to "FDA-prescribed methodology" sufficient to describe method of testing to satisfy Rule 9(b)); *see also Tortilla Factory, LLC v. Health-Ade LLC*, No. 17-cv-9090-MWF (AFMX), 2018 WL 6174708, at *10 (C.D. Cal. July 13, 2018) (finding reference to unidentified third-party lab testing sufficient to put Defendant on notice).

Further questions regarding testing, including protein amounts in Bonafide's other Chicken Products from other ConsumerLabs testing, would be improper for the Court to address at this stage, as "the court does not weigh evidence, evaluate witness credibility, or consider the likelihood that a plaintiff will prevail at trial" in a motion to dismiss. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 907 (S.D. Cal. 2020) (citing *Twombly*, 550 U.S. at 556); *see also Berk v. Choy*, 607 U.S. 187, 187–88 (2026) (noting Rule 12 "prohibit[s] courts from considering 'matters outside the pleadings' when evaluating whether a plaintiff has stated a claim . . . The court instead asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570). Plaintiff has therefore provided sufficient details to satisfy the heightened requirements of Rule 9(b). Accordingly, Bonafide's Motion to Dismiss Plaintiff's claims under Rule 9(b) is **DENIED**.

**2. Reasonable Consumer**

Second, Bonafide argues that Plaintiff's claims fail under the "reasonable consumer" test. The "reasonable consumer" test governs claims under the UCL, FAL, and CLRA, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), and it requires plaintiffs to "show that members of the public are likely to be deceived." *Id.* (internal quotation

---

[2] "ConsumerLab's independent lab testing analyzed total protein by combustion (AOAC 992.15) and collagen calculated from hydroxyproline by High Performance Liquid Chromatography (HPLC) (AOAC 990.26)." (*Id.* ¶ 23.)

marks and citation omitted). A complaint alleging violation of the UCL, FAL, or CLRA must therefore "allege that the packaging will deceive many consumers, not just that a few might be deceived." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024). "This requires more than a mere possibility that [the statements] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 495 (2003)). Under the reasonable consumer test, a product's labels should be read in context and not in isolation. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012).

Bonafide argues that no reasonable consumer would be misled by the Products' labels because Plaintiff has not established that "some or even all" of Bonafide's Products contain fewer than ten grams of protein, as stated on the label. (Doc. No. 16 at 26.) However, the Court does not "weigh evidence" in a motion to dismiss, *Stasi*, 501 F. Supp. at 907, but need only consider whether the "claim to relief is plausible on its face," *Twombly*, 550 U.S. at 570. The Court has found that Plaintiff plausibly alleges the Products contain less than the advertised amount of protein. Plaintiff thus plausibly alleges that a reasonable consumer would read the Products' labels and believe the Products would contain the amount of protein advertised. Plaintiff has therefore stated a claim for relief that is plausible on its face. Furthermore, the Ninth Circuit has held that only in rare situations would the reasonable consumer test "raise[] questions of fact that are appropriate for resolution on a motion to dismiss." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Because Plaintiff plausibly alleges the Products' packaging will deceive many consumers, the Court **DENIES** Bonafide's Motion to Dismiss as it relates to the reasonable consumer standard.

**3. Equitable Relief**

Third, Bonafide seeks to dismiss Plaintiff's claims for equitable relief, arguing that Plaintiff has an adequate remedy at law. Specifically, Bonafide argues Plaintiff's harm is "purely economic" and solely entitled to damages, thus Plaintiff does not "plausibly allege

why his harms cannot be cured with monetary damages." (Doc. No. 16 at 27–28.) Plaintiff seeks both equitable restitution and injunctive relief. (Doc. No. 15 at Prayer for Relief ¶¶ (f)–(g).) Plaintiff argues Bonafide's argument is premature, as "Plaintiff's UCL, FAL, and Unjust Enrichment claims are pleaded 'in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).'" (Doc. No. 20 at 27) (citation omitted). Plaintiff also argues that threat of future harm due to inability to rely on Bonafide's Products' labeling in the future is sufficient to establish that Plaintiff lacks an adequate remedy at law. (*Id.* at 27–29.)

The Ninth Circuit has established that plaintiffs cannot recover equitable relief in federal court when they have an adequate remedy at law, including UCL, FAL, and CLRA claims for damages. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020). Plaintiffs bear the burden of establishing that they lack this adequate remedy. *Id.* at 844. Many district courts have found that plaintiffs may still plead equitable relief in the alternative at this stage, some providing the caveat that plaintiffs must allege that the legal remedies are inadequate. *See Barton v. Procter & Gamble Co.*, 766 F. Supp. 3d 1045, 1067 (S.D. Cal. 2025) (dismissing claims for restitution and/or disgorgement because "Plaintiffs here plead no allegations that the legal remedies are inadequate for the restitution or disgorgement that they seek under the UCL and FAL") (emphasis in original); *see also Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 897 (N.D. Cal. 2022) ("Plaintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage"); *Byton N. Am. Co. v. Breitfeld*, No. 19-cv-10563-DMG-JEMX, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) ("T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent."). Such findings align with Federal Rule of Civil Procedure 8, which states that a demand for relief "may include relief in the alternative or different types of relief." *See* Fed. R. Civ. P. 8(a)(3).

Accordingly, the Court finds that Plaintiff may plead equitable restitution in the alternative at the pleading stage. Additionally, Plaintiff sufficiently alleges inadequate legal remedies by alleging that Plaintiff "will be unable to make informed decisions about whether to purchase Defendant's products and will be unable to evaluate the different

prices between Defendant's Products and competitors' products" and will be "likely to be repeatedly misled . . . unless and until Defendant is compelled to ensure that the Products' protein content is accurately represented." (Doc. No. 15 ¶ 5.)

As it relates to injunctive relief, in *Sonner*, the Ninth Circuit explicitly noted "[i]njunctive relief is not at issue." 971 F.3d at 842. Since *Sonner*, district courts are split on whether the decision applies to injunctive relief. *See Rice v. Kimberly-Clark Corp.*, No. 2:21-cv-01519-DAD-KJN, 2022 WL 16804522, at *3 (E.D. Cal. Nov. 8, 2022) (noting split regarding injunctive relief claims); *compare Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 2:21-cv-01292-DAD-BAM, 2022 WL 2345677, at *4 (E.D. Cal. June 29, 2022) (holding that "plaintiff may seek equitable relief in the form of an injunction under the UCL, even if she also seeks monetary damages for past conduct"), *with Teresa Adams v. Cole Haan, LLC*, No. SACV20913JVSDFMX, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (finding no "exception for injunctions" under *Sonner*). However, more recently, courts have not applied *Sonner* to injunctive relief claims, finding that "the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice." *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021).

Here, the Court is persuaded by the more recent trend of permitting a plaintiff to seek injunctive relief, even if he also seeks monetary damages for past conduct. Money damages are an inadequate remedy for future harm because they may not be sufficient deterrence for fraudulent business practices. *See Zeiger v. WETPET LLC*, No. 3:17-cv-04056-WHO, 2021 WL 756109, at *21 (N.D. Cal. Feb. 26, 2021) (noting that even assuming *Sonner* applies to injunctive relief the plaintiff had shown monetary damages were an inadequate remedy because damages compensate for past purchases where an injunction ensures that one can rely on a defendant's representations in the future). In this case, Plaintiff alleges injunctive relief is sought to mitigate future harm. Thus, the Court finds Plaintiff sufficiently alleges legal remedies are inadequate. Bonafide's Motion to Dismiss Plaintiff's claims for equitable restitution and injunctive relief is **DENIED**.

**4. Nationwide Class Allegations**

Finally, Bonafide argues that Plaintiff's nationwide class allegations are deficient because (1) Plaintiff lacks standing to assert nationwide class claims; (2) California law may not be applied nationwide; and (3) material differences in state laws preclude Plaintiff from representing a nationwide class. (Doc. No. 16 at 29–39.)

First, Bonafide argues Plaintiff lacks Article III standing to assert claims under laws of states in which no named plaintiff either resides or has purchased products. (Doc. No. 16 at 29–30.) Bonafide, therefore, contends that "every claim based on violation of a state law without a representative plaintiff should be dismissed for lack of standing." (*Id.*) Not so.

As discussed above, Plaintiff has met the threshold standing question. Thus, this secondary standing analysis relating to Plaintiff's standing related to the multi-state class is best left for class certification and after further discovery. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (holding that a facts and circumstances analysis of each claim should be "governed by the consumer protection laws of the jurisdiction in which the transaction took place" at the class certification stage); *see also Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017) (deferring this secondary standing analysis related to the multi-state class until the class certification stage).

Second, Bonafide argues California law may not be applied to out-of-state class members because of "serious conflicts between the laws of the 50 states," thus, the national class claims should be dismissed. (Doc. No. 16 at 30–39.) Bonafide relies on *Mazza* to contend such conflicts allow for dismissal at the pleading stage. (*Id.*) Plaintiff argues this is premature and best handled at the class certification stage, especially because Plaintiff is a resident of California. (Doc. No. 20 at 29–30.)

In *Mazza*, the Ninth Circuit held that the district court "abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws." *Mazza*, 666 F.3d at 590. After conducting California's three-step governmental

interest test, it held that under "the facts and circumstance of this case," each "class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 590–94.

Post *Mazza*, courts are divided on whether dismissal of a nationwide class is appropriate at the motion to dismiss stage. *Compare In re Clorox Consumer Litigation* 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs claims."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("[I]t would be premature to speculate about whether the difference in various states' consumer protection laws are material in this case."); *Zapata Fonseca v. Goya Foods Inc.*, Case No. 16-CV-02559-LHK, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) (denying dismissal of nationwide class because *Mazza*, which was decided at the class certification stage and not on a motion to dismiss, depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws applied to the facts of the plaintiffs' claims); *Sonner v. Schwabe N. Am., Inc.*, No. EDCV 15-01358-VAP, 2015 WL 13307076, at *8 (C.D. Cal. Nov. 18, 2015) ("A detailed choice-of-law analysis would be inappropriate" on a motion to strike); *Valencia v. Volkswagen Grp. of America Inc.*, Case No. 15-cv-00887-HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) ("Whether California law differs from the laws of other states in a way that is material *to this litigation* is not a proper inquiry at the pleading stage.") (emphasis in original), *with Glenn v. Hyundai Motor Am.*, SACV 15-2052 DOC (KESx), 2016 WL 3621280, at *5 (C.D. Cal. June 24, 2016) ("The Court notes that while *Mazza* was decided at the class certification stage, the decision 'applies generally and is instructive when addressing a motion to dismiss.'") (quoting *Frezza v. Google, Inc.*, CV 5:12-237 RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013)); *Davison v. Kia Motors America, Inc.*, No. 15-cv-0239-CJC (RNBx), 2015 WL 3970502, at *2 (C.D. Cal. 2015) (conducting choice of law analysis at motion to dismiss stage). "*Mazza* did not

purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." *Forcellati*, 876 F. Supp. 2d at 1159.

This Court agrees with the "[n]umerous courts [which] have rejected the argument that *Mazza* (which did not address a motion to dismiss) requires dismissal of nationwide-class claims at the pleading stage." *Kellman v. WFM Private Label, L.P.*, No. 17-CV-06584-LB, 2019 WL 1429576, at *10 (N.D. Cal. Mar. 29, 2019). "California's choice-of-law rules require a case-by-case analysis of whether there are material differences between the laws of the relevant states and, if so, which state's interest would be most impaired by application of the other state's law." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1107–08 (S.D. Cal. 2015) (citing *Mazza*, 666 F.3d at 590). This analysis is better suited for class certification. The cases where courts did conduct a complete choice-of-law analysis at the pleading stage, are inapposite, as they involved non-California residents asserting that California law should be applied nationwide. *See Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC, 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015) (holding it was evident that "every state would be impaired in its ability to protect the consumers within its borders if California law were applied to all claims of the nationwide class" as plaintiff was a Washington resident and did not allege she was wronged in California); *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013) (holding it was "readily apparent" that plaintiffs' UCL claims were precluded under *Mazza* because the transactions at issue occurred in the plaintiffs' state of North Carolina). Here, Plaintiff is a resident of California and his alleged injury occurred in California. (Doc. No. 15 ¶ 4.) Thus, the Court **DENIES** Bonafide's Motion to Dismiss Plaintiff's claims on this basis. *See Kanfer*, 142 F. Supp. 3d at 1107–08 ("[W]hether the differences in law are truly material is better suited for resolution at class certification or on a motion for summary judgment, when the Court will have the benefit of a more developed factual record."); *Kellman*, 2019 WL 1429576, at *10.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Bonafide's Motion to Dismiss in its entirety. The Court finds Plaintiff has standing to bring the claims asserted and has adequately pleaded his claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Bonafide must file an answer to the First Amended Complaint by no later than **September 2, 2026**.

**IT IS SO ORDERED.**

Dated: August 18, 2026

Hon. Anthony J. Battaglia
United States District Judge